WESTERN UNION TELEGRAPH CO. v. CATES.

(Court of Civil Appeals of Texas. Nov. 9, 1910. Rehearing Denied Dec. 7, 1910.)

1. PLEADING (§ 205*)—GENERAL AND SPECIAL DEMURRER—"SPECIAL DEMURRER."

A demurrer to the whole petition on the ground that it does not set out a cause of action "in a logical and legal form" should be regarded as a general demurrer, as a "special demurrer" is one pointing out defects in a pleading in such a manner that they may be amended.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 491–510; Dec. Dig. § 205.*

For other definitions, see Words and Phrases, vol. 7, pp. 6573, 6574.*]

2. TELEGRAPHS AND TELEPHONES (§ 65*)—ACTION—DEMURRER—SPECIFICATION OF DEFECTS.

A demurrer to a petition against a telegraph company for failure to deliver a death message, in that the petition failed to allege facts connecting the alleged negligence of the defendant with the absence of the addressee at the funeral of plaintiff's husband, and alleged consequential injury to plaintiff, was objectionable for failure to point out specifically the defects in the petition complained of.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 65.*]

3. TELEGRAPHS AND TELEPHONES (§ 65*)—MESSAGES—FAILURE TO DELIVER—PETITION—DEMURRER.

A petition alleged that plaintiff's father promised to be present in the event of the illness and death of plaintiff's husband, and that, if the messages delivered to defendant telegraph company had been promptly delivered, plaintiff's father would have assisted her in nursing her husband and would have been present at his funeral, and would have been a great comfort to her in such case. It also alleged that the failure to deliver the messages deprived her of the comfort her father would have been to her at the funeral, and that she was left alone among strangers to bury her husband, and by reason thereof she suffered great grief and mental anguish. Held, that the petition was not demurrable for failure to allege facts connecting defendant's negligence with the absence of plaintiff's father at the funeral and consequent injury to her.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 65.*]

4. TELEGRAPHS AND TELEPHONES (§ 65*)—DEATH MESSAGE—FAILURE TO DELIVER—PETITION.

Allegations of a petition against a telegraph company for negligence in failing to deliver a death message to plaintiff's father, the addressee, relating to information given by the father to defendant at H. as to where he could be found, should a death message arrive, and the promise of the agent to forward it to the father provided it arrived after he had left to go to his daughter to assist her in caring for her sick husband, were proper as indicating that, if diligence had been used in the delivery of the last message, the addressee would have been intercepted in his journey and would have been present at the husband's funeral.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 65.*]

5. TELEGRAPHS AND TELEPHONES (§ 66*)—DEATH MESSAGE—FAILURE TO DELIVER—NEGLIGENCE—EVIDENCE.

In an action against a telegraph company for failure to deliver a death message to plaintiff's father, by reason of which he was unable to attend the funeral of plaintiff's husband, evidence held to sustain a finding that defendant was negligent; that it had actual knowledge of the character of the message; and that plaintiff would probably suffer mental anguish from a failure to deliver it.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 66.*]

Appeal from District Court, De Witt County; James C. Wilson, Judge.

Action by Elizabeth Cates against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

N. L. Lindsley and Proctor, Vandenberge & Crain, for appellant. Price & Green and Davidson & Bailey, for appellee.

FLY, J. Appellee instituted suit against appellant to recover damages arising from a failure to deliver telegrams sent by her to her father, relative to the sickness, death, and funeral of her husband. The cause was tried by the court, a jury having been waived, and judgment was rendered in favor of appellee for $1,000.

The evidence showed that appellee, a bride of a few weeks, was in Batesville, Ark., when her husband became very sick, and on February 9, 1908, she telegraphed his condition to her father, R. A. Rowland, at Cuero, Tex. On February 12th she delivered a message to appellant at Batesville to be delivered to her father at Cuero, asking him to send a nurse at once and to answer, which telegram was delivered. On February 13th another message was sent by appellee to her father informing him that her husband was in a very critical condition and little hope of his recovery was entertained. On same date she sent another telegram asking her father to come, then a later saying: "Joe dying, don't come." That telegram was delivered after appellee's father had left Cuero for Batesville. On Friday, February 14, 1908, appellee delivered to appellant at Batesville, Ark., the following message directed to her mother: "Leave tonight for Waco; funeral there Sunday; meet me there; if papa has started for Batesville, stop him by wire." Her father had notified appellee before starting that he would leave on night of February 13th, and for her to send a message to him at Houston and to her mother at Cuero. On February 14th Mrs. Rowland telegraphed her daughter that her father had started to Batesville, and requesting her to wait for him. That message was not delivered. R. A. Rowland reached Houston on the morning of February 14th and informed appellant's agent that he would be at the depot of the International & Great Northern Railway Company until 5 o'clock p. m., and that he was expecting a death message from Batesville, and if it arrived before that hour for it to be delivered at said depot, and if not to be sent to him on the train leaving at that hour. Appellee on February 14th, between 3 and 4 p. m., delivered to appellant this message: "Rev. R. A. Rowland, Houston, Texas. Am leaving tonight for Waco. Funeral Sunday. Meet me there." That message reached Houston about 4 o'clock a. m. on February 15, 1908, and was not delivered. The result of the nondelivery was that Mr. Rowland went to Arkansas, and did not reach Waco in time for the funeral of his son-in-law. Appellee suffered greatly on account of the failure of her father to reach Waco, and was damaged in the sum found by the court. Her father could and would have reached Waco in time for the funeral if the message had been delivered at Houston or along the route to Texarkana. The agent at Houston agreed to forward the message to Mr. Rowland on the train.

The petition alleges a cause of action, and the court did not err in overruling what is denominated the "first special demurrer," which should, however, with more accuracy be called a "general demurrer," as it attacks the whole petition on the ground that it does not set out a cause of action in "a logical and legal form." The office of a special demurrer is to point out defects in the pleadings so that they may be amended, and the exception in this case fails to meet that requirement. Boynton v. Tidwell, 19 Tex. 118; Telegraph Co. v. Grimes, 82 Tex. 89, 17 S. W. 831. The petition was not open to attack through a general demurrer, and the first and second assignments of error are therefore overruled.

The third special exception, upon which the third assignment of error depends, is as follows: "That the petition fails to allege facts connecting the alleged negligence of the defendant with the absence of said father at the funeral in Waco and alleged consequent injury to plaintiff." That exception does not point out specifically the defects complained of, and is a weak basis for an assignment of error. The petition, however, alleged that appellee's father promised to be present in the event of the illness and death of her husband, and that, if the messages had been promptly delivered, "he could and would have been present and would have assisted her in nursing her said husband, and would have been present at the funeral of her said husband, J. W. Cates, and would have consoled her and would have been of great comfort to her at such sad occasion." She also alleged that, by the failure to deliver the messages, especially the one sent by her to Houston, "she was prevented from enjoying the comfort and consolation her said father would have afforded her at said funeral, and that she was left alone in her sorrow and grief among strangers to bury her husband, whom she cherished, loved, and admired, and to whom she was much attached, alone and friendless and without any one to help her at Waco, Tex., by reason of which she has suffered great grief and mental anguish and distress of mind," etc. While not a model in construction, composition, and perspicuity, the petition is explicit enough to place appellant upon full notice of what would be proved against it. The fourth special exception, upon which the fourth assignment is based, is just as general as the third exception, and is disposed of by our comments on the third assignment of error.

The fifth assignment of error is based on an exception to that portion of the petition relating to the information given by the father of appellee, at Houston, to the agent of appellant, as to where he could be found

should a death message arrive, which he was expecting; and the promise of the agent to deliver it, or forward it if her father had left for Batesville., The grounds of the exception are "that all such allegations, as indicated above, are irrelevant and constitute no proper element of any cause of action on the part of said plaintiff, Mrs. Cates." The exception is without merit. The allegation was proper as tending to show that, if diligence had been used in the delivery of the last message, appellee's father would have been intercepted in his journey and could and would have been present at the funeral.

The sixth and seventh assignments of error question the sufficiency of the evidence to sustain a finding by the trial judge that appellant was guilty of negligence in not delivering the message at Houston, or on the train, to R. A. Rowland. The evidence showed that the message was delivered to Bayer, a friend of appellee, at the hotel in Batesville, Ark., between 3 and 4 o'clock p. m. February 14th, and that Mr. Rowland, to whom it was addressed in Houston, had informed appellant of his location, and that he did not leave Houston until about 5 o'clock p. m. February 14th. The agent at Houston was in possession of all the facts as to where Mr. Rowland would be until 5 o'clock, and that he would be on a certain train until he reached Texarkana. The message reached Houston on the morning of February 15th, and was never delivered to Mr. Rowland until he wrote for it on February 18th. The agent agreed to transmit the message from Houston to R. A. Rowland on the train. Bayer, to whom the Houston message was given by appellee, did not remember the hour at which he delivered the message to appellant, but she gave it to him at the hotel in Batesville between 3 and 4 o'clock p. m. February 14th, and she testified that he left with the telegram for the office at the same hour. Batesville is a small town, and very little time must have been consumed in going from the hotel to the telegraph office. It is certain that the message was delivered by Bayer to appellant on the afternoon of February 14th, because he swore that he so delivered it in person, and he and appellee left there on the same afternoon, and the delivery must necessarily have been made before they left Batesville. The court was justified in finding that appellant was negligent in not delivering the message to Mr. Rowland at Houston, or to him while en route to Texarkana. The message was not sent to Mr. Rowland until February 18th, and then only in response to his request for it.

Bayer testified that he told the operator of appellant at Batesville the purpose of the messages and the relationship existing between Mrs. Cates and R. A. Rowland, the messages disclosed the relationship and the urgency and importance of the messages, and the operator or manager at Houston was informed of the facts. The ninth assignment, proceeding as it does on a want of notice in regard to the matters enumerated, must necessarily fail. It would not matter if the relationship was not disclosed when the last message was delivered; it had been disclosed before, and that was sufficient. As said by Bayer, the operator "was well aware from previous conversations that Rev. R. A. Rowland was the father of the Mrs. J. W. or Elizabeth Cates who sent the message signed Lizzie, for I had told him that Rowland was her father, when I had sent previous telegrams." The cases cited by appellant have reference to a different state of facts from those in this case. In this case appellant had actual notice of all the facts necessary to fix its liability. It knew that appellee was in Batesville with a sick husband, that she was desirous to have her father with her, that he died, that she then was very desirous that her father should be reached at Houston so he could be with her at the funeral in Waco. It was charged with notice that she would suffer on account of his absence from the funeral. This view of the liability of appellant for the resultant damages is not contrary to any views expressed in Tel. Co. v. Luck, 91 Tex. 178, 41 S. W. 469, 66 Am. St. Rep. 869, and Tel. Co. v. Wilson, 97 Tex. 22, 75 S. W. 482. In neither of those cases was the relationship of the parties made known to the telegraph company, nor the probable consequences of a failure to deliver the messages. Independent of the information given by Bayer, his testimony tended to show that the operator knew J. W. Cates, the husband of appellee. The telegrams showed the anxiety of appellee and her great desire to have her father at the funeral of "Joe," and, whether the operator positively knew who Joe was or not, the appellant would be liable for the mental anguish caused appellee by a failure to deliver her telegrams. The anguish on which the suit is based is not on account of the death of the husband, but on account of the father of appellee not being at the funeral of some one in whom she was intensely interested.

If R. A. Rowland had remained in Houston until midnight of February 14th, the message delivered to appellant in Batesville on the afternoon of the same day would not have reached him, and yet appellant seems to justify itself and seeks absolution from its negligence on the ground that, if it had been negligent, it was not proved that the message could have been delivered before Rowland left Houston. Appellant has positive evidence in its possession, no doubt, as to when the message was delivered, but has not seen proper to disclose it; but the facts in evidence show that appellee sent Bayer with the message to the office between 3 and 4 o'clock, that he and appellee left with the body of her husband some time in the afternoon, that is before sundown, that he delivered the message in person, and consequently must have delivered it in the afternoon at

some time before he left on the train with appellee. The trial court judicially knew that the sun set on February 14th in Arkansas about 5:30 o'clock p. m. (People v. Mayes, 113 Cal. 618, 45 Pac. 860), and necessarily appellee and Bayer, who left in the afternoon, must have left Batesville before that hour, and the message was delivered to appellant at some time before they left. All of the facts tend to show that appellant could have delivered the message in Houston before 5 o'clock if it had used diligence.

The twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth assignments are disposed of by our conclusions of facts hereinbefore indicated.

We think the evidence objected to was not open to the objections urged to it, but, if it had been objectionable, there is sufficient legal evidence to sustain the judgment, and it will not be disturbed.

The judgment is affirmed.