WESTERN UNION TELEGRAPH COMPANY v. MRS. ELIZABETH CATES.

No. 2240.    Decided June 19, 1912.

1.—Telegraph— Negligence—Burden of Proof.

Though the burden of proof is on plaintiff to show negligent delay by defendant in the transmission of a telegram, and the testimony of plaintiff as to the time of filing it somewhat indefinite, such testimony will be favorably considered where defendant, having power to show the precise time, failed to do so or to show what efforts toward diligence in forwarding it were made. (P. 329.)

2.—Telegraph—Delay—Negligence—Practice in Supreme Court.

Testimony considered and held to show some evidence, though slight, in support of a finding of negligent delay in the transmission of a death message, the carrier being advised of the circumstances and of its urgency. A determination of the sufficiency of such evidence was not, in such case, within

the jurisdiction of the Supreme Court; and the judgment being supported by this finding, error upon other issues became immaterial. (Pp. 326-330.)

### 3.—Telegraph—Contract to Forward.

It is questioned, but not decided, being rendered immaterial by other findings, whether a contract by a telegraph company with the addressee of a telegram to forward it, if received, to a new address, enured alone to his benefit, or became a part of the original contract for the benefit of the sender. (P. 328.)

Error to the Court of Civil Appeals, Fourth District, in an appeal from DeWitt County.

Mrs. Cates sued the Telegraph Company and recovered, the defendant obtaining writ of error on the affirmance of the judgment upon its appeal.

*Geo. H. Fearons* and *Proctor, Vandenberge, Crain & Lewright,* for plaintiff in error.—The fact that the addressee in a telegraph message, who was expecting said message to be sent to him at a particular address, instructed the agent of the telegraph company at the point where the message was originally sent to him by the sender, to forward same upon its arrival to another point, would in no manner make the telegraph company liable in damages to the sender of the message through failure of said company to forward the message as requested by the addressee, even though it had agreed so to do.

Even if the testimony of the witness Rowland be true as to the conversation between him and the alleged employe of plaintiff in error in its Houston office, with reference to forwarding the message, when received at Houston, to him on the moving train between Houston and Batesville, Arkansas, nevertheless plaintiff in error was not bound thereby, for the reason that said employe was not shown to have had authority to bind plaintiff in error by any such contract or agreement. Baker v. Kellet Co., 84 S. W., 661; Wills v. I. & G. N. R'y Co., 92 S. W., 272; I. & G. N. R'y Co. v. Anderson, 82 Texas, 517; T. & P. R'y Co. v. Moody, 23 S. W., 41; T. & P. R'y Co. v. Black, 87 Texas, 165; Lytle v. C. News Co., 27 Texas Civ. App., 530; Rice v. Peninsular Club, 17 N. W., 708; Day v. Snyder, 130 S. W., 716; Gunter v. Robinson, 112 S. W., 134.

To bind a principal, the act of the agent must be performed in furtherance of the master's business, and at least within the general scope of the agent's employment. (I. & G. N. v. Cooper, 88 Texas, 607; I. & G. N. v. Anderson, 82 Texas, 520.) The ordinary business of a telegraph company is to forward definite written telegrams from one point to a definite given point, and addressed to a definite person. That is the contract between its sender and the telegraph company, and in which the addressee has the beneficial interest. So long as there is any uncertainty as to either the addressee or the destination, there is no complete telegraph message. If one of the telegraph company's operators is authorized by the sender to fill in the addressee's name, or the name of the place to which it is to be addressed, he is the sender's agent, just as he is the sender's agent if he is asked to write the body of the message. W. U. Tel. Co. v. Foster, 64 Texas, 220; W. U. Tel. Co. v. Edsall, 63 Texas, 668; Railroad Co. v. Geer,

5 Texas Civ. App., 349; W. U. Tel. Co. v. Prevatl, 43 So., 106; W. U. Tel. Co. v. Benson, 48 So., 712; W. U. Tel. Co. v. Jackson, 50 So., 318.

There is nothing whatsoever in the evidence to show when Bayer filed the message; and the evidence is clearly insufficient to support the court's findings and conclusions. W. U. Tel. Co. v. Twaddell, 47 Texas Civ. App., 51; W. U. Tel. Co. v. True, 101 Texas, 236; W. U. Tel. Co. v. Wilson, 97 Texas, 22; W. U. Tel. Co. v. Luck, 91 Texas, 178; W. U. Tel. Co. v. Kibble, 53 Texas Civ. App., 222.

*Price & Green* and *Davidson & Bailey,* for defendant in error.— Where one has created another his agent to deal with the public, the public has a right to conclude that the principal intends the agent to have and exercise all powers which necessarily, properly, and legitimately belong to the character in which he is held out to the public. Meacham on Agency, ed. 1889, sec. 278, 279, p. 179-180; Butler v. Maples, 9 Wall., 766; W. U. Tel. Co. v. Todd, 53 N. E., 194; Carland v. W. U. Tel. Co., 118 Mich., 369; Core v. W. U. Tel. Co., 124 S. W., 278; Equitable Life Ins. Co. v. Ellis, 137 S. W., 184.

Mr. Justice Dibrell delivered the opinion of the court.

This suit was brought by the plaintiff below, Mrs. Elizabeth Cates, against the Western Union Telegraph Company to recover damages resulting from the failure to properly transmit and deliver a death message to her father, whose presence at the funeral and burial of her husband she greatly desired. The circumstances as alleged and shown by the evidence were that plaintiff and her husband had been only shortly married, and moved from Cuero, Texas, to Batesville, Arkansas, where they had resided for less than two months and were strangers there, having no friend or relations at that place. Her father was the Rev. R. A. Rowland, who at that time resided at Cuero, Texas. On the 9th day of February, 1908, the husband of plaintiff was taken seriously ill at their residence in Batesville, Arkansas, and she telegraphed her father on that day to Cuero, Texas, as follows: "Joe very sick, doctor much concerned. (Signed) Lizzie." This telegram was duly received. A number of other telegrams were sent by plaintiff to her father at Cuero, Texas, by the context of which the relationship of the parties and the purpose of the message were fully disclosed. On the 13th of February plaintiff sent to her father through her agent the telegram reading, "come at once; doctors give up all hope," and in response to this message plaintiff's father left Cuero for Batesville on the night of February 13th, going by way of Houston. After plaintiff's father had left Cuero for Batesville and on February 14th, plaintiff sent to him at Cuero a message reading: "Joe dying; don't come." This message, however, was not received by her father as he had left Cuero before it was delivered, and hence he was not aware of the arrangements contemplated by plaintiff with regard to the burial of her husband. Plaintiff's father before leaving Cuero on February 13th, for Batesville, Arkansas, telegraphed plaintiff that he was leaving for that point and instructing her to telegraph him the following morning at Houston. Plaintiff after sending the message to her father on the 13th of February, expected

him to leave Cuero at once to come to her as he had promised to do in the event she ever needed him in sickness or death, and after the message was sent asking him to come to her at once plaintiff on February 14th, sent to her mother, Mrs. R. A. Rowland, a message saying: "Leave tonight for Waco, funeral there Sunday, meet me there. If papa has started for Batesville stop him by wire."

Plaintiff's father upon reaching Houston, having on account of a delayed train missed connection, went to the office of defendant and inquired whether a message had been received there for him from Batesville, Arkansas, telling defendant's agent who he was and explaining to him that he was expecting a death message from his daughter at Batesville, Arkansas. The train on which the Reverend Mr. Rowland was to depart for Batesville was due to leave Houston at 4:40 o'clock in the afternoon, the regular time, and he made inquiry at the office of defendant at least three times during the day for any message that might have been received by defendant for him, and finally a short time before the train was due to leave which was five o'clock P. M. on account of a little delay, he went to defendant's office, made inquiry for the message, and told the agent that it was a life and death case with him and notified such agent that if the message came at any time before five o'clock that he could be found in the waiting room at the depot of the International & Great Northern Railroad Company in the city of Houston and to deliver such message there. At this time plaintiff's father arranged with defendant's agent to transmit or forward to him the message to Palestine if received in time to do so, but if not received in time to reach him there, then to send it to him in care of the conductor of that train, assuring the agent that he would not leave that train en route to Batesville for which he agreed to pay defendant for forwarding such message, to which defendant's agent fully agreed.

The message which plaintiff's father was expecting and which forms the basis of this suit is as follows:

"Batesville, Ark., February 14th.

Rev. R. A. Rowland,
        Houston, Texas.
Am leaving for Waco tonight, funeral Sunday, meet me there. Lizzie."

It was not shown at what time this message reached Houston, but it was not delivered to Mr. Rowland until about February 18th, and after he had returned from his trip to Batesville. The message was delivered to defendant at Batesville between three and four o'clock P. M. February 14th, for transmission to plaintiff's father at Houston, Texas, a distance of about five hundred miles, with request that it be promptly sent and delivered. At the time and before the message was deposited with defendant for transmission the person making such delivery explained to defendant's agent all the circumstances, the purpose and importance of the message. By reason of the fact of the non-delivery of said message plaintiff's father went on to Batesville, Arkansas, and plaintiff with the body of her husband went

to Waco, Texas, where the body was buried on the afternoon of February 16th and plaintiff's father did not reach Waco until about nine o'clock on the evening of that day and after the burial. He was not able to learn at Batesville to what point the body had been shipped, but thought it had gone to Oklahoma until he reached Texarkana on his way back to Texas.

Plaintiff was a stranger at Waco, having only once met any of the relatives of her husband, and was there among strangers at the funeral and burial of her husband and sustained all the damages alleged in her petition.

The defendant presented a general demurrer, certain special exceptions to the sufficiency of plaintiff's petition and a general denial. The cause was tried before the court without a jury and judgment for $1000.00 was rendered for plaintiff against defendant. The cause was by the Court of Civil Appeals affirmed. (132 S. W., 92.)

The writ of error in this case was granted for the purpose of examining the question as to whether the telegraph company would be bound by an agreement by the sendee of a telegram with an agent of the company before the telegram had been deposited with the company for transmission to forward such telegram to the sendee at a point named, and in case such agreement is binding, to determine whether it became a new contract for the benefit alone of the sendee, or whether it formed a part of the original contract for the benefit of the sender. The question is one not free from difficulty and importance.

It was also thought at the time the writ was granted that the evidence failed to show negligence on the part of defendant in getting the message to Houston. Upon a careful examination of the record we find that we are not able to say there is no evidence in the record of defendant's negligence in failing to get the message declared on to Houston. Since the Court of Civil Appeals has found as a fact there was negligence on the part of defendant in failing to get the message to Houston in time to have delivered it to plaintiff's father before he left on the five o'clock train for Batesville, Arkansas, we have no jurisdiction to question or review such finding if there is any evidence of negligence in the record. From a most careful consideration of the facts produced as set forth in the record we cannot say, as matter of law, there is not any evidence of negligence on the company's part in failing to get the message to Houston in time to have delivered it to plaintiff's father. This being true it follows that unless the record discloses some other error assigned for which a reversal should be had it would be incumbent upon this court to affirm the judgment of the Court of Civil Appeals and to forego a discussion of the main question upon which the writ of error was granted for the purpose of examination. It is not essential to a disposition of the case that the question affecting the validity of the agreement made by the sendee of the message with defendant's agent to forward it to the sendee; for if the defendant was guilty of negligence in failing to deliver the message to plaintiff's father before he left Houston on the afternoon of February 14th, and there is no

other error for which the judgment should be reversed, there is no necessity for discussing the question mentioned and we will not do so.

In holding that there is some evidence in the record from which we think the court could reasonably conclude that defendant was negligent in failing to promptly transmit and deliver the message to the sendee, who did everything within his power to aid and encourage its prompt delivery, it is proper to state some of the facts and circumstances connected with the case upon which we base our conclusion. There is no room for doubt that defendant was from both the contents of the several messages themselves and from what was told its agent by the sender of the messages fully aware that plaintiff was the daughter of the Rev. R. A. Rowland, to whom the message was sent, and that she was anxious to have him with her at the funeral and burial of her husband, who had died at Batesville and whose body she was taking to Waco, Texas, for interment. The defendant knew that ''Joe'' was the husband of plaintiff and that ''Lizzie'' was Joe's wife. The importance of an expeditious transmission and delivery of the message was emphasized and impressed upon defendant by the former messages from the daughter to the father and from the father to the daughter, manifesting the deepest solicitude and the tenderest sympathy. They began by the announcement of the serious illness of plaintiff's husband, followed by a statement of the fear of the attendant physician, the loss of their hope of recovery, a plea for comfort and finally that the end had been reached and a continued plea for personal consolation. This was sufficient to draw from defendant an effort to use some care and caution in forwarding with reasonable dispatch the message declared on, but we find that notwithstanding the urgency, the message, delivered for transmission at Batesville between three and four o'clock in the afternoon to be sent to Houston, Texas, did not reach its destination until the following day. There might have been some good reason for this delay, or why the message did not reach Houston in time to have been delivered to plaintiff's father before he left that city at five o'clock P. M. for Batesville, Arkansas, but such valid excuse, if it existed, was known only to defendant and was not disclosed upon the trial of the case.

It was shown that at least two telegrams were sent and delivered on each of the days of the 13th and 14th of February, and we consider this some evidence that it was within the power of defendant, in the absence of some intervening cause, to have transmitted and delivered the message in question before the sendee left Houston. This is made reasonably certain when taken in connection with the common knowledge of the speediness of the electric current. There intervened between the time the message was filed for transmission and the time when the sendee left Houston about one hour and a half, sufficient time, without intervening causes of relays and busy wires not shown to have existed, to have belted the earth. If the message was not filed at Batesville at the time claimed by plaintiff, it was as suggested by Judge Fly, within the power of the defendant to have shown the contrary. While the burden of proof was upon the plaintiff to establish negligence, yet where the exact time of the

filing of the message for transmission was important the testimony of the plaintiff as to such time though somewhat indefinite will be construed most favorably to her statement, when it appears that it was within the power of defendant to show the precise time of such filing, and it· failed to do so.    Pullman Palace Car Co. v. Nelson, 22 Texas Civ. App., 223, 54 S. W., 625.

Both the trial court and the Court of Civil Appeals have found that defendant was negligent in failing to transmit and deliver the message declared on to plaintiff's father at Houston before he left for Batesville on the afternoon of February 14th, and finding in the record facts and circumstances unexplained and undenied, relating to the receipt, the transmission and non-delivery of the message in question, and believing all the other questions presented have been properly disposed of by the Court of Civil Appeals, we think the judgment of that court should be affirmed, and it is accordingly so ordered.

*Affirmed.*