BAKER v. BROWN et al.    (No. 8954.)

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 21, 1918.)

1. CARRIERS ⬅228(5) — LIVE STOCK SHIPMENT—DELAY—SUFFICIENCY OF EVIDENCE.

Evidence that it took railroad more than 40 hours to transport shipment 221 miles, and that there were two delays of 8 hours each, *held* sufficient, in the absence of explanation on part of railroad justifying delays, to warrant finding that delay was unreasonable.

2. CARRIERS ⬅228(5)—LIVE STOCK SHIPMENT—UNREASONABLE DELAY—EXPLANATION OF DELAY.

Where there is evidence of unusual delay in transmission of shipment of stock, railroad's failure to explain delay is of itself clothed with probative force on the question of whether delay was unreasonable.

3. EVIDENCE ⬅17—JUDICIAL NOTICE—TIME CONSUMED IN TRAVEL.

A court is authorized to take judicial cognizance of the length of time consumed in travel by the present modes of conveyance between two designated places; such facts being facts of general knowledge.

4. EVIDENCE ⬅66—PRESUMPTIONS—LENGTH OF TIME CONSUMED IN TRAVEL.

Jurors will be presumed to have knowledge of the length of time consumed in travel between two designated places; such facts being facts of general knowledge.

5. CARRIERS ⬅230(8) — UNREASONABLE DELAY—ACTION FOR DAMAGES—INSTRUCTIONS.

Evidence *held* to warrant instruction on issue of whether railroad company exercised ordinary care to avoid unusual and unreasonable delay in live stock shipment.

6. APPEAL AND ERROR ⬅1064(4)—REVIEW—HARMLESS ERROR—SUBMISSION OF ISSUE.

In shipper's action for delay in transmission of live stock shipment, instruction on issue whether carrier held shipment "for a great length of time" was not prejudicial, though some other expression than that quoted could have been more appropriately used, where there was undisputed evidence of delay.

Appeal from District Court, Howard County; W. W. Beall, Judge.

Suit by G. A. Brown and another against James A. Baker, receiver. Judgment for plaintiffs, and defendant appeals. Affirmed.

Littler & Penix and S. A. Penix, all of Big Spring, for appellant.

J. A. Templeton, of Ft. Worth, for appellees.

BUCK, J. Suit was brought by G. A. Brown and W. H. Jackson against the receiver of the International & Great Northern Railway Company for the sum of $1,875, alleged damages to a shipment of mules from Big Springs to Thrall, Tex., shipment made over the Texas & Pacific Railway from Big Springs to Ft. Worth, and from Ft. Worth over the International & Great Northern Railway to Thrall. Plaintiffs pleaded that the shipment was delivered to the defendant by the Texas & Pacific Railway in good condition, but that the defendant was guilty of negligence in the manner of the handling of said shipment; that the train containing the shipment made a slow run from Ft. Worth to Thrall, frequently stopped and delayed for considerable time en route, stopping and starting with great force and violence, etc. The principal delay alleged occurred at the station of Gause, in Milan county, some 45 miles from Thrall. It was alleged that the delay at Gause was for a period of about 8 hours, the train arriving there about 1 o'clock a. m. January 2, 1917; that the engine pulling the train was uncoupled from the train and used for purposes wholly disconnected with the movement of said stock, and that the stock were left on the side track without feed or water, both of which they were sorely in need of, for said 8 hours; thereafter they were transported over defendant's line to Thrall, where they arrived about 1 o'clock a. m. January 3d; that upon the arrival of the shipment at Thrall, plaintiff Jackson, who accompanied same as caretaker, at once called the defendant's agent and notified him of the arrival of said stock and of the necessity of unloading, feeding, and watering them, but that said agent negligently and wrongfully failed to unload or feed or water said stock until about 9 o'clock a. m. of said last-mentioned date, when he permitted the stock to be unloaded, but that he did not water or feed them until about 10 o'clock p. m. of said date, when a few of the mules were watered in tubs and given a small amount of

feed. Plaintiffs further alleged that defendant was negligent in failing to have at Thrall proper facilities for feeding and watering said stock. Defendant answered by general demurrer and general denial, and specially pleaded that the plaintiff Jackson entered into a written contract with defendant whereby he agreed and obligated himself to feed and water the stock and to pay for the feed while in the stockyards, and that defendant was under no obligation to water and feed them, and it was plaintiffs' duty to do so. Plaintiffs, in their supplemental petition, pleaded that no suitable pens and facilities were provided for feeding and watering the stock, or for unloading and resting them, while in transit on defendant's line.

The first assignment is leveled at the giving in charge to the jury the following paragraph of the court's main charge, to wit:

"It was the duty of the receiver of the International & Great Northern Railway to use ordinary care and diligence in handling and transporting plaintiffs' mules from Ft. Worth to Thrall, Tex., and to do so without any delays except such as were reasonable and necessary, and without injury other than such as was natural and incident thereto."

It is urged that it was error for the court to submit the issue as to whether any delays occurring in transit were reasonable and necessary, or were unreasonable and unnecessary, in the absence of any evidence upon that issue. It does not appear that any witness testified as to what was the usual and customary time for such shipment from Ft. Worth to Thrall, or whether or not the time taken, to wit, 40 hours, to travel about 221 miles, was a usual or unusual time. The evidence shows that the explanation given by the railway company for the delay at Gause was that the engine pulling the stock train was needed to pull a passenger train whose engine had become disabled. Jackson testified:

"My recollection is that I shipped out of Ft. Worth that night about 6 o'clock—I mean that they were reloaded about 6 o'clock, and we got out of there at about 8, something a little after 8; they went out of Ft. Worth over the I. & G. N. road. * * * I think it was the 1st day of January—it was night—that we got out of Ft. Worth, about 8 o'clock. As to whether we had any considerable delay: Well, the run was as good as we get over a local, on a local, till we got to Valley Junction, and we staid there a little while, and we run up then to Gause, a little place, I think it was 7 or 8 miles from Valley, and there they sidetracked this train, and took the engine to go back and get the through passenger, the fast train; the engine had went dead, the locomotive had, and they took the locomotive off of this train and went back to pull this passenger train. And when they sidetracked, and I seen that they had taken the engine off, I went to the conductor and asked him what they was going to do about it, and he told me, and he says, 'There is another train that will pick you up in about four hours;' and I said, 'It might and might not, you know how those things are; and if they did stay there, I had those mules over there, and if it didn't come along in a reasonable time, I will unload them and feed them;' and he said it wouldn't be necessary; and he just left me there on the sidetrack. That was about 1 o'clock the 2d day of January; * * * and I stayed there then until about 10 o'clock that night on the sidetrack, and they picked me up and run me into Thrall, where I was billed to. * * * We got into Thrall about 1 o'clock."

[1, 2] While it appears no witness testified in so many words that the time taken for the trip was unusual or longer than necessary, yet we think the jury, composed of men of ordinary sense and experience, were justified in concluding that the delays at Thrall and Gause were unusual and even unreasonable delays, in the absence of some explanation justifying such delays. It does not appear that any explanation was made of the delay at Gause, except that the engine was detached for the purpose of hauling the passenger train. No explanation is given for the delay in not unloading the shipment at Thrall, except that the defendant's station agent at Thrall testified that the stock arrived there during the night, as testified by witness Jackson, and that they were unloaded the next morning. Jackson testified, in substance, to the facts pleaded in plaintiff's petition. The facts were before the jury, as to the two delays, one at Gause and the other at Thrall, of some 8 hours each, and that some 40 hours were taken from the time the shipment left Ft. Worth until the stock were unloaded at Thrall. We think this evidence tends to establish unreasonable delays in the transmission of the shipment, and that at the same time it discloses that it was within the power and to the interest of the railway company to show that the delays were not unreasonable. The silence of the railway company in such a case, not only strengthens the probative force of the affirmative proof, but is of itself clothed with a certain probative force. M., K. & T. Ry. Co. v. Day, 104 Tex. 237, 136 S. W. 435, 34 L. R. A. (N. S.) 111; G., H. & S. A. Ry. Co. v. Young, 45 Tex. Civ. App. 430, 100 S. W. 994; W. U. Tel. Co. v. Cates, 105 Tex. 324, 148 S. W. 281; S. A. & A. P. Ry. Co. v. Williams, 158 S. W. 1173; State Bank v. Burrus Mill & Elevator Co. (No. 8900) 207 S. W. 400, recently decided by this court, and cases there cited.

16 Cyc. p. 933, reads as follows:

"The party having the burden of proof may establish a prima facie case in several ways: (1) He may prove facts which give rise to an

# 314

inference of that probative weight; or (2) he may establish the existence of some legal substitute for such an inference of fact; or (3) he may proceed by a combination of these methods as to the whole or different parts of his case."

[3-5] We think the jury, from the common experience and knowledge of men with reference to the usual and customary rate of travel of shipments like the one in question, were authorized to find that 40 hours taken in a trip of 221 miles, and two delays of 8 hours each, are unusual and not customary, and to conclude, in the absence of any explanation given by the railway company, that said delays were unreasonable. A court is authorized to take judicial cognizance of the length of time consumed in travel by the present modes of conveyance between two designated places. 16 Cyc. 863; Magee v. Chadoin, 30 Tex. 644; Blethen v. Bonner, 52 S. W. 571, writ denied; 16 Cyc. p. 873 (iv). If a court can take judicial knowledge of such matters, it is because they are facts of general knowledge; hence juries, composed of men of ordinary intelligence and experience, are presumed to have such knowledge. We are of the opinion that the evidence cited presented the issue of whether or not the railway company exercised ordinary care to avoid unusual and unreasonable delays in the shipment in question, and the court did not err in the charge given.

Complaint is also made in the use of the expression of "a great length of time" in the court's charge as follows:

"And if you further find from the evidence that defendant, or his agents or employés, held said live stock in his care in his yards for a great length of time, as alleged by plaintiff," etc.

[6] The proposition of this assignment is:

"It is error for the court to instruct the jury upon a point not raised by the evidence, even though the issue is made by the pleadings."

While we think some other expression might have been used more appropriately, yet we are unable to say that the uncontradicted evidence does not show that, under the circumstances, the live stock in question were held by the defendant "for a great length of time." We are of the opinion that the jury could not have been misled, and that the defendant was not injuriously affected by the use of the expression in the connection in which it was used. The facts as to the delays were largely undisputed, and appellant does not claim any material conflict as to the evidence upon the question of the delays in defendant's yards; hence we overrule both of appellant's assignments, and the judgment is affirmed.

Judgment affirmed.